IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOE HAND PROMOTIONS, INC.,

        Plaintiff,

vs.                                 Case No. 16-2154-JTM

DONNIE CLARK, *et al.*,

        Defendants.

MEMORANDUM AND ORDER

On March 15, 2014, according to the Complaint, an Ultimate Fighting Championship match distributed by satellite was exhibited at the Larned Country Club, also known as Pin High Bar & Grill, in Larned, Kansas. The owner of rights to the UFC match, Joe Hand Promotions, Inc., has sued the club and its owner, Donnie Clark, under federal statutes designed to prevent the unauthorized interception or retransmission of electronic programming. Joe Hand alleges that the defendants violated 47 U.S.C. § 553 and 605(a), because they were not authorized to exhibit the match.

Section 605(a) prohibits the publication of "wire or radio" communications, "except through authorized channels." Radio communications include satellite transmissions. *See Joe Hand Promotions, Inc. v. Tribelhorne*, No. 11- 2041-CM, 2011 WL 2848288, at *1 (D. Kan.

July 15, 2011). Section 553 prohibits the unauthorized reception or interception of "any communication service offered over a cable system."

The defendants have moved to dismiss, arguing that Joe Hand has failed to state a claim for relief under 47 U.S.C. § 605, because the Complaint fails to demonstrate how the defendants violated federal law, failing to indicate "whether Pin High and Mr. Clark received the Program via piracy of satellite signal versus interception of cable service." (Dkt. 6, at 5). In fact, they contend, they received the program by cable network. And no § 553 liability exists, they argue, citing cases such as *Kingvision Pay Per View v. Duermeier*, 24 F. Supp. 2d 1179, 1183 (D. Kan. 1998), because they used no black-box descrambler or other illegal device, but paid for the program.

Joe Hand states, twice, that a case should be dismissed unless "'it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief.'" (Dkt. 7, at 3-4, 4-5) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957))). The defendants correctly note that the plaintiff misstates the holding in *Robbins*, where the Tenth Circuit explicitly observed that the "no set of facts" *Conley* standard had been rejected by the Supreme Court's decision in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).

Nevertheless, the court will deny the motion to dismiss, because the Complaint remains plausible on its face under *Twombly*. In reviewing a complaint in the wake of a motion to dismiss

> "[P]lausible" cannot mean "likely to be true." Rather, "plausibility" in this

> context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [*Twombly*, 127 S.Ct.] at 1974. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them.
>
> ....
>
> The Third Circuit has noted, and we agree, that the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context: "Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case...." *Phillips* [*v. County of Allegheny*], 515 F.3d [224,] 231-32 [(3d Cir. 2008)].

519 F.2d at 1247-48.

The Complaint in the present action fully supplies such context. The Complaint identifies the programming which was allegedly illegally published, the time and place of the publication, and other specific facts surrounding the alleged violation. The defendants have been supplied with sufficient information to understand the nature of the plaintiff's claim, and the factual background for its contentions.

The cases cited by the defendants do not support dismissal of the action. Noting a split among the Ciruits, the court in *Kansas City Cable Partners ex rel. Time Warner Entertainment v. Espy*, 250 F.Supp.2d 1296, 1302 (D. Kan. 2003) held that § 605 was generally intended to apply to the interception of "radio signals, in this case satellite programming,

transmitted through the air" before they are received by a cable company. Because the defendant in *Espy* intercepted the program through a device which unscrambled his cable signal, the court held that there was no liability under § 605.

In *Kingston Pay Per View v. Duermeier*, 24 F.Supp.2d 1179 (D. Kan. 1998), the defendant bar owner and cable subscriber videotaped a boxing match at home, and then played the tape at the bar. The court agreed that the defendant had "received" the cable transmission, but his action did not violate § 553 because "his receipt of the service was authorized." *Id.* at 1183.

Critically, both *Duermeier* and *Espy* were not resolved on motions to dismiss, but on summary judgment. *Duermeier*, indeed, was resolved on facts stipulated to by the parties. In both cases, therefore, the court determined the existence of liability only after the opportunity for discovery relating to the plaintiffs' claims.

In *Espy* the defendant was a private individual, and there was no allegation of retransmission or exhibition for commercial profit. In *Duermeier*, there were no facts presented which addressed the extent of the authorized cable viewing.

The Complaint filed by the plaintiff, however, affirmatively states that Joe Hand is "the exclusive domestic commercial distributor" of the program in question. (Dkt. 1, ¶ 2). The defendants were not viewing the program as private cable subscribers. They are identified as "a business entity" and as its "owner, principal, and/or manager." (¶¶ 6, 9). They exhibited the program for "financial benefit." (¶ 8). The program was transmitted via satellite to cable companies, which were allowed show to authorized customers only. (¶

17). The Complaint alleges the possible use of technological interception (¶ 18), but also the illegal use of a cable program beyond authorization, citing the practice of "commercial establishments misusing cable or satellite by registering same as a resident when it is, in fact, a business; or ... taking a lawfully obtained box or satellite receiver from a private residence into a business."

The public exhibition for commercial gain of satellite programming may violate § 605 where the program was received by the defendant as a residential customer, but then publicly shown without the payment of a commercial sublicensing fee. *See, e.g. Joe Hand Promotions v. Jorkay, LLC,* No. 10-536-D, 2013 WL 2447867, *2 (E.D.N.C. June 5, 2013) (observing that § 605 is a strict liability statute, and granting summary judgment in favor of plaintiff on similar facts). In addition, the public and commercial exhibition of programming received as a residential cable television customer may violate § 553. *See Joe Hand Promotions vs. Double Down Entertainment*, No. 11-2438-MBS, 2014 WL 994382, *5 (D. S.C. March 13, 2014) (bar and grill violated § 553 where it exhibited a cable program after paying only a $44.99 residential fee to the cable company rather than the $1,100 commercial fee). That §§ 553 and 605 are generally considered mutually exclusive is not a bar to the pleading of both statutes as alternating claims for pleading purposes. *See J & J Sports Prods. v. Gonzalez*, 2013 WL 6022225, at *5-6 (E.D. Pa. Nov. 14, 2013). The court finds that the plaintiff has pled its claims with sufficient particularity, and is entitled to discovery in support of those claims.

IT IS ACCORDINGLY ORDERED this 3rd day of June, 2016, that the defendants' Motion to Dismiss (Dkt. 5) is hereby denied.

s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE